Denzil O. KITE, Employee-Respondent,

v.

POLSKY MOTORS, INC., Employer and Iowa National Mutual Insurance Company, Insurer, Appellants.

No. WD 30836.

Missouri Court of Appeals, Western District.

March 30, 1981.

Joseph B. Bott, Kansas City, for appellants.

Joseph L. Flynn and Candace J. Barnes, St. Joseph, for respondent.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and SWOFFORD, JJ.

SWOFFORD, Senior Judge.

This case arises from a claim under the Workmen's Compensation Act initiated by the respondent, Denzil O. Kite (Kite), who was employed by the appellant, Polsky Motors, Inc. (Polsky), as an automobile mechanic. Kite's amended claim for compensation alleged that on October 20, 1976:

> "The employee, while in his employment, was removing the hood from an automobile, and struck his knee on the bumper of the motor vehicle causing his hip to give way while his arms were outstretched and his body in an unusual and awkward position, causing a sudden strain followed by a sudden and immediate pain in his right groin area, diagnosed as a hernia, which did not exist prior to the accident."

The employer-insurer's answer to this amended claim generally denied the above-quoted part of the claim and further stated:

> "Employer and Insurer specifically deny that the claimant sustained an accidental injury arising out of and in the course of his employment with Polsky Motors, Inc."

The claim came on for hearing before Referee Tracy (now Administrative Law Judge) of the Labor and Industrial Relations Commission (Commission) and the parties entered into certain stipulations upon the record as follows: Both Polsky and Kite on October 20, 1976 were operating under the compensation law; that employer was given notice of the injury and that the original claim was timely filed; Kite's rate of compensation, of which none had been paid; his time lost from work and the duration of the healing period; and, the amount of the medical and hospital bills, and that none of these had been paid by the employ-

er-insurer and were outstanding. During the course of the record on these stipulations the following appears:

"THE COURT: Is it admitted on or about October 20, 1976, Denzil Kite sustained an accident arising out of and in the course of his employment?

MR. BOTT (Counsel for employer-insurer): Denied."

At the conclusion of the stipulation record the following appears:

"THE COURT: The only dispute is whether or not Mr. Kite sustained an accident arising out of and in the course of his employment on October 20, 1976. * * * Let's confine testimony to the issue."

This statement and direction of the referee was not objected to and no request was made of him by the parties to modify or extend the scope of the inquiry and the evidence, thus restricted, was heard.

The only evidence proffered by the claimant Kite was his own testimony. In summary, as pertinent to the sole issue tried, he stated that at the time of his injury he was engaged in removing the engine hood from a 1976 Lincoln automobile; that after he had unbolted the hood "it takes two men to remove this because it's a big hood", and that he was on one side and a fellow employee (who was not called as a witness) was on the other. In order to get the hood clear of the car he was in a stretched position, leaning forward; he was close to (practically against) the car and he had to go "around" the front of the car which had a big extended bumper and when he went around the bumper his right knee "caught it pretty heavy" and he "went down and the hood over on me", "it came down on me" striking him somewhere about the belt line. When he went down he experienced pain in his hip and after 3–4 minutes, while he was on the floor "I felt like I was on fire down in my groin". An ambulance took him to the hospital where thereafter within a short period of time he was operated for a hernia on the right side.

On cross-examination he testified that he had been an auto mechanic about 40 years; that he had removed many hoods from cars, knew how to do this work and on the day of his injury he was following ordinary procedures. The particular hood being removed from the Lincoln was approximately 5–6 feet across and probably 8 feet in length. This model Lincoln is "an awful big car", required two men to handle the hood, and each has to extend both arms in front and lift from under the hood.

This is the usual way to carry a hood when removing it from a car and he has done it time and time again and no different or unusual method was being employed when he was injured and he did not "slip or fall".

His original claim for compensation was marked as an exhibit, which he identified as bearing his signature. He testified this claim was prepared by a Mr. Combs, an employee of the Commission with whom he had initially consulted and it contained the relation of facts "exactly" as he told Combs. According to the exhibit Kite admitted it contained nothing about his hitting his knee, "but that didn't even enter into my mind this would enter into the case". Kite stated that he thought Combs had told him to tell exactly what had happened and gave him every opportunity to do so; he gave Combs all the details to the best of his knowledge; the claim form was typed up and the claimant signed it; and he had no objection as to the way Combs filled it out.

The original claim was admitted in evidence without objection and the narrative of the occurrence of the injury is as follows:

"The employee in the course and scope of his employment was attempting to remove the hood from an automobile and while his arms were outstretched and his body in an unusual and awkward position, he sustained an unusual strain and suffered a hernia which did not pre-exist but which appeared suddenly, immediately after and as a direct result thereof."

Within about two weeks after the injury Kite stated that he was interviewed on the telephone by a Mr. Locke, an adjuster for the insurer, and Mr. Locke asked him to

state "what happened" and he does not believe he said anything to Locke about hitting his knee or leg on the bumper. He told Locke substantially the same thing he told Mr. Combs, that he had experienced a pain in his *groin* as he was walking around the car; that he had not slipped or fallen or "anything like that"; that the operation of removing the hood was being done in the usual manner; and that *nothing unusual had happened*. Kite stated that he figured that bumping his knee "didn't enter into it at all". Kite had returned to work December 17, 1976 and the original claim was signed by him on March 29, 1977. Kite stated that it was not until he talked to his attorney subsequent to March 29, 1977 that he figured bumping his knee had "anything to do with it". The following appears:

"Q. It wasn't until after you talked to your attorney that you decided you would say you hit your knee on the bumper of the car?

A. This is true."

The record shows that the amended claim was dated June 1, 1977, the date Kite states was the first occasion when he consulted with his attorney. Kite testified on redirect examination he told his attorney about bumping his knee and repeats that he did bump his knee on the bumper as he went around the car and immediately experienced pain in his hip and fell to the floor.

The employer-insurer called as its only witness Mr. John Locke, who was an insurance adjuster for the insurer herein and who stated that in November, 1976 he investigated the claim of Kite. On November 3, 1976 he interviewed Kite by long distance telephone and asked him to relate how the injury occurred. He stated that Kite told him that as he was moving to the front of the car he felt a pain in his hip immediately followed by a pain in his groin as he was falling to the floor. Locke stated that Kite said the removal of the car hood was being done in the standard and usual manner and he did not relate to the witness any incident of bumping any part of his body on the car before feeling the pain.

A transcript of the telephone conversation or interview had been prepared and Locke identified it as his conversation with Kite.

It contains the following:

"Q. (Mr. Locke) Did you slip or anything or was this just a normal procedure of walking and the pain hit you or was there a slip or did you hit something or fall first?

A. There was, like I said before, we were using an air gun and there was antifreeze on the floor where I was working. There is a possibility I could have slipped, but as far as slipping, I don't know, but when you were in that kind of strain and have that much pain you don't think much about this slipping business. I didn't think about it either until the pain hit me and then I didn't really know what happened."

and further:

"Q. (Mr. Locke) Do you know—could you remember anything causing the pain like a specific slip or hitting anything?

A. Oh, no, no, no."

The referee made an award of compensation to Kite based upon temporary total disability together with all medical expenses in a total amount of $2,368.10. In his findings of fact he carefully summarized the evidence and noted the inconsistencies in the claimant's various statements with reference to striking his knee. These findings further point out that the original claim did allege that the claimant "while arms were outstretched and body in unusual and awkward position he sustained an unusual strain and suffered a hernia which did not pre-exist" and concluded:

"In any event the evidence is uncontroverted that while in an unusual and awkward position the employee had pain in his hip, he fell while holding the hood and sustained the injury complained of. * * *"

The employer-insurer secured a review of this award by the Commission. In its final

award the Commission reversed the award of the referee and denied compensation and medical aid.

Upon appeal to the circuit court by the employee Kite, that court ordered the claim returned to the commission "with direction to reopen the testimony before the Administrative Law Judge to allow the employee to produce the necessary medical testimony or to reinstate the award of the Administrative Law Judge". This appeal followed.

The appellants raise two points relied on which are: (1) the circuit court erred as there was substantial competent evidence to support the commission's final award and it was not clearly contrary to the overwhelming weight of the evidence; and (2) the circuit court erred since the burden was on the claimant to prove all material elements of his claim and he failed to do so.

While these points relied on are certainly not models under the requirements of Rule 84.04(d) it has been gleaned from the record that the appellants' Point I is based upon their position that the credibility of Kite as to the injury was so completely destroyed as to hitting his knee on the car bumper that he failed to prove by substantial competent evidence that he suffered a compensable injury as required by Section 287.195 RSMo 1969 (now RSMo 1978) which provides as follows:

"*Claims for hernia, proof required.*—In all claims for compensation for hernia * * it must be definitely proved to the satisfaction of the *division or the commission* :

(1) That there was an accident or un- usual strain resulting in hernia;

(2) That the hernia appeared suddenly, accompanied by intense pain;

(3) That the hernia immediately followed the accident or unusual strain;

(4) That the hernia did not exist prior to the accident or unusual strain resulting in the injury for which compensation is claimed." (Emphasis added)

No serious claim appears to have been made by the employer-insurer (except under their Point II as to medical causation) that the claimant's cause failed because of lack of evidence to support the required

proof under subparagraphs (2) and (4) of the statute. Rather the whole thrust of their argument is based upon a failure to offer sufficient evidence to support subparagraphs (1) and (3) and, therefore, the commission's award under Section 287.490–1(4) RSMo 1969 was proper.

At the outset it is noted that the scope of review in this appeal is well defined and strictly limited. This court reviews the award of the commission and not the findings of the referee (now administrative law judge) nor the findings of the circuit court in the intermediate stages of appeal. *Lewis v. City of Liberty*, 600 S.W.2d 677, 679[1–3] (Mo.App.1980); *Craig v. Calvert*, 572 S.W.2d 235, 237[1] (Mo.App.1978); *Begey v. Parkhill Trucking Company*, 546 S.W.2d 529, 532[5, 6] (Mo.App.1977). In so doing this court is further limited by constitutional and statutory provisions. Article V, Sec. 22, (amended to Article V, Section 18 effective 1/2/79) sets out the appropriate standard for judicial review of administrative agency decisions as being confined to whether "supported by competent and substantial evidence upon the whole record". Section 287.490 RSMo 1969 (now RSMo 1978) defines this constitutional provision in more specific terms. That statute, as applicable to this case, provides:

"1. * * * Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

\* \* \* \* \* \*

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.
\* \* \* "

The commission in its final award found specifically the substance of the claimant's hearing testimony as to striking his right knee on the bumper of the automobile, feel-

ing pain in his "groin or hip" before falling to the floor; the fact that he had made no mention of striking his knee in his original claim wherein his description of the accident indicated the injury resulted from his body being in an unusual and awkward position and sustaining an unusual strain to his abdomen and groin; that claimant made no mention of hitting his leg on the bumper of the car "although specifically asked" in his recorded interview with the insurance adjuster; and his statement at trial that it was true that it was not until after he had talked to his attorney that he decided he would "say" he hit his knee on the bumper of the car.

The commission then concluded:

"Based upon the numerous foregoing accounts related by the employee, we are unable to find that the employee sustained his burden of proving by credible evidence that he sustained a compensable incident within the meaning of the Act."

The commission based this conclusion upon the case of *Welborn v. Southern Equipment Company*, 395 S.W.2d 119 (Mo.en banc 1965) wherein the court said, l.c. 126[6]:

" * * * Contradictory testimony of a single witness, relied on to prove a fact, does not constitute substantial evidence in the absence of an explanation or other circumstances tending to show which of the two versions is true. * * * "

The court further declared in *Welborn*, l.c. 126[7]:

" * * * The Commission is the sole judge of the weight of the evidence and the credibility of the witnesses. * * * "

It is apparent from the findings of the commission that it unanimously concluded that because of the contradictory extrajudicial statements and admissions and omissions therefrom as compared to his hearing testimony he lacked credibility and under *Welborn* it denied compensation.

It must be kept in mind that the whole theory or thrust of claimant's testimony at the hearing appears to be that the hitting of his knee on the car bumper caused the pain to strike his hip and set in motion his fall with the car hood falling on top of him striking him at the belt line followed by the pain and burning sensation (after 3–4 minutes) in his groin, thereafter diagnosed and operated as a hernia. He testified that, while the car hood was large and required help from a fellow employee to remove and clear it from the car to the floor of the work area and in order to do so he assumed a forward leaning arms outstretched and strained position, there was nothing unusual about the procedure employed and that he had done it many times.

This brings this court to the narrow point for decision concentrated upon its scope of review upon appeal of a finding and award based solely upon an administrative commission's disbelief of the testimony and credibility of the claimant, upon which his claim exclusively rests.

 It has long been the firmly fixed law in this state that the Industrial Commission is the judge of the credibility of witnesses and a reviewing court does not substitute its judgment for that of the commission. *Merriman v. Ben Gutman Truck Service, Incorporated*, 392 S.W.2d 292, 296[4] (Mo.1965). Further, the commission cannot be required to accept as true the testimony of a witness if the commission, in exercising its power and duty to determine facts, does not believe the testimony of that witness. *Snowbarger v. M. F. A. Central Co-operative*, 349 S.W.2d 224, 225[1] (Mo.en banc 1961). Also, the Industrial Commission may disbelieve the testimony of a witness even though no contradictory or impeaching testimony appears. *Petersen v. Central Pattern Co.*, 562 S.W.2d 153, 156[6] (Mo.App.1978); *Manis v. L. A. Hilderbrandt Enterprises*, 595 S.W.2d 414, 416 (Mo.App. 1980); *Vogel v. Hall Implement Company*, 551 S.W.2d 922, 923[1–4] (Mo.App.1977).

 Under these decisions, cases cited therein and many other decisions, the scope of this court's review and its ultimate obligation in this case is to determine whether the commission could reasonably have made its findings of fact and final award under its power to judge the credibility of Kite

and upon this record. If so, this court on appeal cannot disturb the commission's findings and award, even though the record would support a contrary conclusion, if such had been reached. It is only where the commission's finding and award is not supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence, viewed in a light most favorable to the commission's award, that this court should disturb the award. *Vogel v. Hall Implement Company*, 551 S.W.2d 922, 923[1–4] (Mo.App.1977) and cases cited therein.

■ Giving appropriate recognition to these principles, the conclusion is reached that the commission could reasonably find that *Kite's* credibility had been seriously impeached as to the "incident" or accident of striking his knee on the car bumper; that such recount of the occurrence was an afterthought, months after the incident and following his first interview with counsel, was not worthy of belief; and, absent that evidence Kite failed to sustain his burden of showing a compensable accident.

■ Respondent Kite asserts that the foregoing rules are not applicable in this case but that, since the issue of accident occurrence depends upon the sole testimony of *Kite*, this issue becomes a question of law fully reviewable by this court on appeal. The respondent relies principally upon the case of *Gold v. Sharp, Kidde, Webb*, 564 S.W.2d 612 (Mo.App.1978) which in turn cites *McClain v. Yellow Cab Company*, 439 S.W.2d 200 (Mo.App.1969) also relied upon by respondent. The *Gold* ruling is based on a statement from *McClain*, 439 S.W.2d, l.c. 202[4] which pointed up the fact in determining the review presented a question of law where the claim was based upon the testimony of a single witness that there was "no question of conflict, credibility or weight of the evidence" then presented.

In the case of *Schoessel v. Standard Automotive Components, etc.*, 539 S.W.2d 708 (Mo.App.1976) the court reviewed a compensation appeal as a matter of law but stated its reason for so doing, l.c. 709[1]:

" * * * This is a case in which the claimant's testimony is undisputed and consti-

tutes the only evidence relevant to the incident in question. *There is no question of conflict, credibility or weight of the evidence. Thus* whether the finding of the Commission was correct becomes a matter of law, and we are not bound by its result. * * * " (Citing cases including *McClain v. Yellow Cab Company*, supra). (Emphasis supplied)

Thus, respondent's position that this case is fully reviewable as a question of law is incorrect and inapplicable here where there was conflict and Kite's credibility was under serious attack.

Applying the rules of deference to the commission's findings and award under the statutory and decisional mandates applicable under the record in this case the judgment below must be reversed and the final award of the commission reinstated.

Having reached such conclusion any discussion of the appellants' second point with reference to the lack of any proof of medical causation becomes moot and need not be ruled.

The judgment of the court below is reversed and the case remanded with directions that the final award of the Labor and Industrial Relations Commission denying compensation be reinstated and become the final disposition of this claim.

All concur.