Craig F. HAYNES, Claimant–Appellant,

v.

R.B. RICE, DIVISION OF SARA LEE,
Employer–Respondent,

Aetna Casualty and Surety Co.,
Insurer–Respondent.

No. WD 41107.

Missouri Court of Appeals,
Western District.

July 25, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 1989.

As Modified Aug. 29, 1989.

Application For Transfer Sustained
Nov. 14, 1989.

Case Retransferred Feb. 13, 1990.

Court of Appeals Opinion Readopted
Feb. 16, 1990.

David D. White, Arthur H. Stoup, Kansas City, for claimant-appellant.

Jeff F. Stigall, Kansas City, for respondents.

Before KENNEDY, C.J., and
LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Claimant, Craig F. Haynes, appeals from the denial of worker's compensation benefits.

Haynes was injured on April 19, 1986, while at work on the premises of his employer R.B. Rice Company. The duties of his employment included cleaning metal chili tubs by using 180 degree Farenheit water directed into the tubs with a high pressure hose.

It is critical to note the following scenario regarding the events that preceded Haynes' injury. On the evening and early morning hours preceding his injury, Haynes had intravenously injected approximately 1½ grams of cocaine into his bloodstream in a series of injections over a four hour period. Additionally, he drank from four to six beers. Further, he had not eaten nor slept the night prior to this incident.

Haynes was addicted to cocaine; his habit cost him nearly all his weekly paycheck. Within weeks of this injury he admits having blacked out as a consequence of excessive use or overdose of cocaine. Additionally, six weeks prior to this incident he nearly died from an overdose.

On the morning of this incident, Haynes was driven to work by a friend, Eddie Salter, who was with him the preceding night. They arrived at approximately 6:00

a.m. Haynes was seen trying to walk into the plant by a co-worker, James Jamison. Mr. Jamison testified as follows:

Q. Tell the Judge what you observed when Eddie, Tim and Craig all arrived on the premises that morning?

A. The first thing they done was they parked, then Eddie and Tim left and Craig sat there in the car for a little while and then he got out of the car and a—

Q. Okay, let's stop there for a minute.

\* \* \* \* \* \*

Q. Tell the Judge exactly what you observed after that?

A. Well, they got out and they left and he stayed in there and I come on up the ramp and stayed there a little while and then he got out of the car and attempted to come down through the basement to go either to the time clock or wherever he was headed at that time.

Q. What did you observe?

A. Well, he wasn't, he wasn't able to walk right, and he didn't walk right, and he started to go down the ramp and he fell down on his knees and he just kind of put his hands forward like this and I walked up to him.

Q. While he was sitting there on his hands and knees?

A. Right. And I tried to help him up, and I tried to help him up three or four different times before I got him up. Well, first of all, I asked him, I said, are you all right.

Q. What did he answer?

A. He never did answer me, he just looked at me, he didn't answer me or nothing; and so then I helped him up and got him back to the car and that is where he just kind of set down on his hind end again, so I left him there.

\* \* \* \* \* \*

Q. (By Mr. Stigall) And you stated you helped him up?

A. Yes.

Q. Then after you helped him up, what happened then?

A. Got him back to the car, which took a lot of time to do because he couldn't walk, he just keep slumping down and you'd have to keep picking him up, and practically toting him.

Q. All right. So then you got to the car, what happened then?

A. I opened the door latch, see, I had his arm with this hand and this arm around him and then I just reached out and got the door latch and then he just kind of saddled down and set down on his hind end and looked up at me and grinned and just laughed.

Haynes was found lying unconscious in scalding water in the chili room at 8:15 or 8:30 a.m., after he had been at work from 90 minutes to two hours. The fall was caused by, or caused, a loss of consciousness. As he lay unconscious on the floor, his head, face, right arm and buttocks were severely burned by the scalding water from the open hose. No one witnessed the fall. However, Haynes told a paramedic that he had not ingested any drugs for twenty-four hours prior to his injury.

There is some dispute in the evidence as to what exactly Haynes had done on the job immediately preceding his accident. His friend, Eddie Salter, testified that on the evening before he only saw Haynes drink four to five beers. Salter admits drinking more beer than that himself. Nonetheless, Salter, claims that he drove to work the next day, that he and Haynes entered the building plant together, and that Haynes was able to walk straight. Salter claims he saw Haynes at the break room and he appeared to be okay. Additionally, Salter states that he saw him during working hours (but before the accident) going back and forth with tubs. Salter stated that he was told that the lights were on in his car, and he asked Haynes to go turn them off. He did not see Haynes again until he learned of the accident.

Conversely, Haynes' supervisor, Melody Pease, testified that she arrived on the job five or ten minutes after the accident. She tried to calm Haynes after the accident. It was her testimony that no tubs had been rinsed out that morning. She further testi-

fied that the floor was dry except for the area where the hose was, and that there was no grease on the floor.

The Labor and Industrial Relations Commission (Commission) denied Haynes' claim for worker's compensation on the ground that his fall was not work related—that it was "an idiopathic fall or blackout ... likely related to cocaine injections." An idiopathic fall, or (to use Larson's language) an "injury arising out of a risk or condition personal to the claimant,"[1] might have happened anywhere under any circumstances and would not have been work related. This finding was placed over against Haynes' claim that his fall had been caused by a sudden slip and fall. The Commission also found that Haynes was intoxicated to a degree that it was impossible for him to perform his duties.

On appeal, the scope of review is limited by section 287.490, RSMo 1986, to questions of law, and this Court may set aside the award of the Commission only upon the following grounds:

(1) That the Commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the Commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.490, RSMo 1986.

The administrative law judge (ALJ) found that Haynes did not sustain an injury arising out of and in the course of his employment. He carefully observed Haynes and listened to his testimony, comparing it with the statements Haynes had made to others prior to trial. On page 4 of his Findings of Fact and Rulings of Law, the ALJ stated, "I find the claimant's testimony wholly without credibility and unworthy of belief." Commissioner Daugherty went on to say:

The claimant's statements to others and the medical records indicate that *immediately after the injury and for several days thereafter he did not know how he fell, did not know what had happened and that he passed out.* Only after several days did he begin to conform his story to a valid definition of an accidental injury; moreover, no one saw the incident which caused the injury and both the claimant and his friend, Eddie Salter, testified unreliably on this point (emphasis added).

The aforementioned findings of the ALJ, which were reviewed and adopted by the Commission, are findings of fact, as they concern the credibility of witnesses and the believability of their respective testimonies concerning how Haynes was actually injured. *Kite v. Polsky Motors, Inc.,* 614 S.W.2d 294, 299 (Mo.App.1981); *Page v. Green,* 686 S.W.2d 528, 530 (Mo.App.1985). There were no eye witnesses to the injury and therefore Haynes' claim hinges solely upon whether or not his testimony is believable.

The ALJ and the Commission have already held that Haynes' inconsistent and contradictory testimony as to how he may possibly have been injured was "wholly lacking credibility and unworthy of belief." These factual findings, if supported by sufficient competent evidence, may not be set aside by this Court. *Kite,* 614 S.W.2d at 299–300; *Page,* 686 S.W.2d at 530. Accordingly, the focus of inquiry of this Court should be whether or not there is sufficient competent evidence in the record to support the factual findings by both the ALJ and the Commission that Haynes' testimony was unworthy of belief and that he did not sustain his burden of showing that he suffered an injury by an accident arising out of or in the course of his employment.

This Court will note, as did the Commission, that Haynes gave contradictory accounts about how he may have been injured. There was the initial history taken from Haynes at the Lee's Summit Community Hospital by Nurse Alexander. This history was recorded in the Emergency Room records which were offered and received into evidence. This history indicated

---

**1.** 1 A. Larson, Larson's Workmen's Compensa-     tion Law, §§ 12.00–12.11 (1985).

that the patient "passed out and fell over pot of boiling water."

Consistent with the aforementioned history that Haynes gave to Nurse Alexander was the accident report which Haynes read and signed, and which stated that Haynes, "Bent over to remove piece of meat from tub. Raised up and last he remembers." This accident report was also offered and received into evidence.

Additionally, there was the sworn testimony of Dr. Hall, a psychiatrist, who interviewed Haynes at the hospital several weeks after his injury. Dr. Hall testified that Haynes told him that he had no recollection whatsoever of the accident or how he was burned.

Finally, there was the statement that Haynes gave to Nurse McCarthy at Shawnee Mission Medical Center several weeks after the accident which was recorded in the medical records, and offered and received into evidence. According to these records Haynes told the nurse that, "he almost died from an O.D. [sic] and was seriously hurt on his job. This accident resulted in his coming into treatment."

Haynes testified at trial that he deliberately lied to the paramedics, Nurse Alexander, Dr. Hall and others and that he now remembers that both feet slipped out from under him causing him to fall and strike his head.

The ALJ went on to state that he observed Haynes' friend, Eddie Salter, whose house Haynes was inside during his series of intravenous cocaine injections, and who drove Haynes to work. The ALJ found that Salter, "testified unreliably" on the issue of Haynes' condition prior to being found unconscious on the plant floor.

In summary, there was sufficient competent evidence to support the ALJ and Commission's factual findings that Haynes' testimony was not believable and these factual findings should not be set aside by this Court.

■ To be entitled to benefits under the Missouri Workers' Compensation Law, the employee must show that his injury was the result of an accident arising out of and in the course of his employment. *Garrett v. Industrial Commission,* 600 S.W.2d 516, 518–19 (Mo.App.1980). Thus, the burden was on Haynes to establish that he had an accident and that the accident arose out of and in the course of his employment.

Although the law, with respect to what constitutes an accident, has become more liberal since *Wynn v. Navajo Freight Lines, Inc.,* 654 S.W.2d 87 (Mo. banc 1983), the courts have not completely disregarded the requirement that the employee has the burden of establishing, as a threshold requirement, that he, in fact, had an accident.

■ Missouri courts have long held that if an injured employee is intoxicated at the time of his injury to the extent that he cannot physically and mentally perform his job duties, then his claim is to be denied. *Phillips v. Air Reduction Sales Co.,* 337 Mo. 587, 85 S.W.2d 551 (Mo.1935); *O'Neil v. Fred Evens Motor Sales Co.,* 160 S.W.2d 775 (Mo.App.1942).

■ The uncontradicted facts in this case are convincing and compelling. Haynes was a cocaine addict, and he intravenously injected cocaine repeatedly into his veins up and until several hours before reporting to work. In addition, he did not take nourishment nor did he sleep the night prior to his injury. He was seen stumbling around, falling to his hands and knees, and was carried back to Salter's car. The testimony of Mr. Jamison, an unbiased, independent Union co-employee, was that Haynes, "looked out of his mind, it would have been impossible for him to work that morning." Cocaine, in the quantitative amount of 2.8 micrograms per milliliter, was found to be present in Haynes' urine and Dr. Oxley, a board certified pathologist, testified that given this high dosage, it would have been impossible for Haynes to have been performing his work duties. Finally, there were Haynes' statements made prior to trial in which he stated that he did not remember what had happened.

In *O'Neil,* an employee was found unconscious next to his car with the engine running. At trial, the employee testified that his foot slipped off the clutch, the car

jerked and he fell on his left side and head rendering him unconscious. It was established on cross-examination that the employee had told doctors and other witnesses that he had no specific recollection of how the injuries occurred. The Court of Appeals in *O'Neil* denied the claim and held that the claimant had not met his burden of establishing that his injuries arose out of and in the course of his employment. *Id.* at 780.

The similarities between *O'Neil* and the instant case are obvious. In both cases, there were no witnesses, and the employee had given conflicting stories of how he was injured. In fact, the only difference between *O'Neil* and the instant case is that in the instant case, a witness, Jim Jamison, actually saw Haynes prior to his injury and testified to his drugged condition. Mr. Jamison's testimony was then corroborated by Dr. Oxley and another co-employee, Melody Pease, who stated that Haynes had not rinsed out any of the chili tubs in the chili room even though he had been somewhere on the premises for approximately an hour and a half.

After the claimant's case was heard and taken under advisement, claimant sought to reopen the case to present new evidence. This so-called new evidence was the testimony of two co-workers (husband and wife) regarding claimant's physical condition immediately prior to the accident. This request was properly denied because with reasonable diligence claimant could have and should have been able to produce this evidence at his hearing as required by the Code of State Regulations Title 8, 20–3.-

030(2). The accident occurred on April 19, 1986. His hearing was February 2 and 3, 1987. There was adequate time for him to prepare his case including the presentment of these witnesses.

In summary, there was sufficient competent evidence for the Commission to find that Haynes was so intoxicated by the intravenous use of narcotics that it would have been impossible for him to perform his work duties, and therefore, his injury did not occur by accident arising out of and in the course of his employment.

Accordingly, the judgment of the Commission is affirmed. Claimant is denied worker's compensation benefits.

KENNEDY, C.J., dissents in separate opinion.

KENNEDY, Chief Judge, dissenting.

I at first thought the result agreed upon by my learned colleagues was the correct one, even the obvious one. A close reading of the record, however, and especially the expert medical evidence, brought me to the opposite conclusion. Only by ignoring the evidence and by substituting its own assumptions about the effects of cocaine use could the Commission deny compensation to claimant.

The Commission's alternative finding[1] that the claimant was so intoxicated at the time of his fall "that it would have been impossible for the claimant to engage in his employment" is based upon speculation.[2] So far as this record shows (and it includes the testimony of three experts—two pathologists and the claimant), cocaine does not

---

1. The Commission's finding of claimant's intoxication is referred to as an alternative finding because the primary finding of the Commission was that the claimant had sustained his injuries as the result of an "idiopathic fall" and were therefore not compensable. The Commission's conclusion on this point was erroneous, because an injury received in an idiopathic fall is compensable if it is caused by a special hazard of the employment (in this case, scalding water under high pressure). *Matthews v. Roadway Express, Inc.,* 660 S.W.2d 768, 770 (Mo.App. 1983); *Collins v. Combustion Engineering Co.,* 490 S.W.2d 394, 396 (Mo.App.1973); *Howard v. Ford Motor Co.,* 363 S.W.2d 61, 67 (Mo.App. 1962).

2. Missouri has never dealt directly with the burden of proof with respect to the intoxication defense, but implicitly has treated it as an affirmative defense to be proved by the employer, *see Page v. Green,* 686 S.W.2d 528 (Mo.App. 1985). All states which have dealt with the question, with the single exception of Texas, *see Texas Employers Ins. Ass'n v. Monroe,* 216 S.W.2d 659 (Tex.App.1948), have treated intoxication as an affirmative defense and have held that the burden is on the employer to prove the worker's intoxication. *See* 100 C.J.S. *Workmen's Compensation* § 521(d) (1958).

intoxicate. I use the term "intoxicate" to mean something resembling alcoholic intoxication, manifested in its advanced stages by lack of coordination and by stupefaction—the kind of disabling intoxication, in other words, which would make it impossible for one to do his work, so that he could be said to have abandoned his employment. It is that level of intoxication that furnishes a defense to a workers' compensation claim. *Phillips v. Air Reduction Sales Co.*, 337 Mo. 587, 85 S.W.2d 551, 554–55 (1935); *Page v. Green*, 686 S.W.2d 528, 532 (Mo.App.1985); *Brown v. Mid–Central Fish Co.*, 641 S.W.2d 785, 787–88 (Mo.App. 1982); *Coonce v. Farmers Insurance Exchange*, 228 S.W.2d 825, 827–28 (Mo.App. 1950); *O'Neil v. Fred Evens Motor Sales Co.*, 160 S.W.2d 775, 779 (Mo.App.1942); *see also* 1A A. Larson, Larson's Workmen's Compensation Law § 34.21 (1985). Cocaine does not have that effect upon a person; it works upon the mood, by way of the cardiovascular system. A broad definition of "intoxication" might include the "highs" and the "lows" induced by cocaine use, but it is not that kind of intoxication that is a defense to a workers' compensation claim.

I can account for the Commission's finding of disabling intoxication only by an assumption on its part that cocaine has the same effect upon the user as alcohol. If one makes that assumption, then the Commission's finding is perfectly logical on the evidence. The claimant is seen (by co-employee Jamison) reeling, staggering and collapsing outside the plant at 6:30 a.m. It is learned that on the previous evening and night, between 9:00 p.m. and 2:00 a.m., he took as many as seven injections of cocaine. If we assume that cocaine works upon the person like alcohol, then it is logical to conclude that claimant was intoxicated, and that the intoxication was caused by the cocaine.

Eliminate the basic premise that cocaine intoxicates like alcohol intoxicates, however, and the conclusion fails that claimant's condition was cocaine-induced intoxication. The evidence is quite clear and undisputed that there are no similarities between alcohol and cocaine in their effects

upon the user. Our knowledge of the familiar alcoholic intoxication is irrelevant in dealing with a case of cocaine usage. There is no evidence whatever that cocaine would have any tendency to cause a person to act in the way claimant was acting as he arrived at work on the morning of his injury.

Launching from its finding that claimant's condition observed by Jamison was cocaine-induced intoxication, the Commission takes a second speculative leap. It reasons that one who is helplessly drunk at 6:30 a.m. is still too drunk to work at 8:30 a.m. when his fall takes place. This perhaps would be a logical inference if we were dealing with alcohol, but not where we are dealing with a condition caused in some other way. The evidence in fact makes it impossible that claimant's condition as described by Jamison continued to the time of the fall.

It seems to me (if I may speculate along with the Commission) that the Commission was on the right track when it found that claimant's fall was caused by an "idiopathic fall or blackout" which was "likely related to cocaine injections". The condition earlier observed by Jamison was also an idiopathic fall likely related to cocaine injections. Claimant had omitted the evening meal the evening before and had had no breakfast on the morning of his fall. He had not slept the night before, although he had lain in bed. He was addicted to cocaine. This was not an isolated instance of abuse of his body; it represented a pattern. Fatigue and malnourishment caused the "idiopathic fall or blackout", and also caused the earlier behavior observed by Jamison. In that way claimant's actions were "related" to his cocaine use. But that is not to say that he was at any time "intoxicated".

The testimony of employer's pathologist Dr. Oxley does not support the Commission's finding of claimant's disabling intoxication. Dr. Oxley pointedly declined to give the answer tendered to him by employer's counsel's question "whether it was impossible for Mr. Haynes to physically and mentally engage in the course of his

employment at R.B. Rice". "Yes", he answered, "I believe it would have been impossible for him to perform his work *appropriately.*" The addition of the word "appropriately" changes the lightning to the lightning bug. Dr. Oxley went ahead to amplify his answer, and his answer does not show disabling intoxication on claimant's part. He gave it as his opinion that the claimant "had in his system enough cocaine to impair functioning", and again that his findings were "consistent with being under the influence of cocaine". That falls short of showing the kind of incapacitating intoxication that is a defense to a workers' compensation claim, and it is clear from Dr. Oxley's testimony that he intended no such meaning.

I would reverse the Commission's award and would remand to the Commission for determination of benefits owing to claimant.